JAMES M. ERICKSON, EMPLOYEE, PLAINTIFF v. LEAR SIEGLER, EMPLOYER, AMERICAN MOTORIST INSURANCE, CARRIER, DEFENDANTS

No. COA07-1420

(Filed 3 March 2009)

**1. Workers' Compensation— complaint of lumbar spine pain—jurisdiction over cervical spine injury—Form 63—Form 33 request for hearing**

The filing by defendant employer and defendant workers' compensation carrier of a Form 63—Notice of Payment of Compensation Without Prejudice invoked the Industrial Commission's jurisdiction over plaintiff employee's cervical spine condition as well as his lumbar spine condition arising as a result of a workplace accident, although plaintiff initially complained of lumbar

ERICKSON v. LEAR SIEGLER

[195 N.C. App. 513 (2009)]

pain and did not file a separate claim for a cervical injury within two years after the accident, where the Form 63 specifically acknowledged plaintiff's claim for "injury on 06/06/2002" and did not purport to limit the claim to any particular body part or portion of the spine, and one of plaintiff's expert witnesses ultimately determined that a cervical spine injury, as well as a lumbar spine injury, was contributing to the pain experienced by plaintiff following the accident. Even if plaintiff's cervical spine condition required the filing of its own claim, plaintiff invoked the jurisdiction of the Industrial Commission over his cervical spine condition under N.C.G.S. § 97-24(a)(ii) by filing a Form 33 requesting a hearing on his claim of injury to his upper, middle and lower back within two years after defendants paid for treatment that included treatment of plaintiff's cervical spine condition.

**2. Workers' Compensation— expert testimony—"likely" cause of injury**

The evidence supported the Industrial Commission's finding that plaintiff's cervical spine condition (neck injury) was causally related to his workplace accident, even though plaintiff complained of lower back and leg pain and testified that he felt a pop in his back rather than in his neck, where the neurosurgeon who performed surgery on plaintiff testified that it was "likely" that the accident caused plaintiff's neck injury.

**3. Workers' Compensation— average weekly wage—calculation**

The Industrial Commission's calculation of plaintiff employee's average weekly as $662.06 under N.C.G.S. § 97-2(5) in a workers' compensation case is remanded for further findings of fact because it cannot be determined how the Commission reached its conclusion.

Appeal by defendants from opinion and award entered 24 August 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 April 2008.

*Brumbaugh, Mu & King, P.A., by Maggie S. Bennington, for plaintiff-appellee.*

*Wilson & Ratledge, PLLC, by Kristine L. Prati, for defendants-appellants.*

ERICKSON v. LEAR SIEGLER

[195 N.C. App. 513 (2009)]

GEER, Judge.

Defendants Lear Siegler and American Motorist Insurance appeal the opinion and award of the Full Commission concluding that plaintiff James M. Erickson's cervical spine condition was a compensable injury. Defendants have not disputed that plaintiff suffered a compensable back injury, but contend that any workers' compensation benefits should be limited to disability and medical expenses arising out of plaintiff's lower back condition rather than his cervical spine condition. We find unpersuasive defendants' contention that the Commission's jurisdiction was timely invoked only as to a lumbar spine condition and not as to a cervical spine condition. Since, in addition, the record contains competent expert testimony supporting the Commission's determination that the compensable workplace accident caused the cervical spine condition, we affirm the Commission's opinion and award as to the cervical spine condition. We must, however, remand for further findings of fact regarding plaintiff's average weekly wage.

## Facts

At the time of the hearing before the deputy commissioner, plaintiff was 57 years old. Plaintiff had served in the United States Army for 26 years, retiring in 1993. In November 1999, plaintiff was hired by defendant Lear Siegler as a mechanic. After working with Lear Siegler for two years, plaintiff was assigned to repair military vehicles.

On 6 June 2002, plaintiff was working on a water trailer and needed to change the axle. Plaintiff first removed the 150-pound wheel and hub and then removed the lug nuts and axle. After removing the axle, plaintiff stood up and turned to the right. As he turned, he felt a "pop" in his back and collapsed on the floor. Eventually, plaintiff stood back up, put away his tools, and went home for the day. The next morning, plaintiff could not get out of bed. He called Lear Siegler, told them what had happened the day before, and explained that he could not get out of bed.

Plaintiff experienced pain from his "neck on down," including pain in his arms and legs. Plaintiff made an attempt to go to work the following Monday, 10 June 2002, but his supervisor informed him that he needed a note from a doctor before returning to work. Lear Siegler did not, however, refer plaintiff to any doctor for medical treatment.

Plaintiff sought treatment at the Veterans Administration Hospital ("VA Hospital") on 11 June 2002. He was diagnosed with an

exacerbation of lumbar disc disease and was referred for an MRI. An MRI was not, however, performed at that time. On 14 June 2002, plaintiff returned to the VA Hospital for re-evaluation of his lower back pain. He was prescribed 500 milligrams of Naproxen, and seven days of bed rest was recommended. Plaintiff returned again to the VA Hospital on 24 June 2002, complaining of lower back pain and pain radiating in his arms and legs. During the course of his treatment at the VA Hospital, the medical providers never gave plaintiff a release to return to work. Plaintiff has not, in fact, worked at Lear Siegler since 6 June 2002.

On 27 June 2002, defendants filed a Form 19 with the Industrial Commission. On 10 July 2002, defendants completed a Form 63— Notice to Employee of Payment of Compensation Without Prejudice—acknowledging (1) plaintiff's "claim" for "injury on 06/06/2002" and (2) that defendant-employer had "actual notice of employee's injury" on 7 June 2002. Defendants stated in the Form 63 that plaintiff's disability began on 7 June 2002 and that the first payment had been made to him on 27 June 2002. After filing the Form 63, defendants did not subsequently deny the claim within the time specified by N.C. Gen. Stat. § 97-18(d) (2007) (providing, upon payment without prejudice, that "[i]f the employer or insurer does not contest the compensability of the claim or its liability therefor within 90 days from the date it first has written or actual notice of the injury or death, or within such additional period as may be granted by the Commission, it waives the right to contest the compensability of and its liability for the claim under this Article").

Defendants began directing plaintiff's medical treatment by arranging for plaintiff to be seen by Dr. Timothy R. Detamore at Carolina Neurosurgical Services, P.A. on 14 August 2002. Dr. Detamore, however, noted that there were no MRIs or x-rays of plaintiff's spine and requested that these tests be completed prior to his examination of plaintiff. On 12 September 2002, plaintiff returned to Dr. Detamore's office for a complete evaluation, complaining primarily of back and leg pain. Following the examination, Dr. Detamore diagnosed plaintiff as having cervical myelopathy, cervical radiculopathy, and lumbar radiculopathy. He ordered a myelogram and took plaintiff out of work until 4 October 2002, the date of plaintiff's next scheduled visit to Dr. Detamore's office.

On 16 September 2002, plaintiff underwent pre-myelogram studies. The studies revealed degenerative disc disease at L5-S1, mild degenerative disc disease at C4-5 and C6-7, and a prior fusion at

C5-6. Plaintiff's myelogram on 23 September 2002 revealed a prior fusion at C5-6 with unremarkable findings; broad disc bulges at C3-4, C4-5, and C6-7; and broad based disc bulges at L3-4, L4-5, and L5-S1. Defendants paid for these tests.

When plaintiff returned to Dr. Detamore's office on 3 October 2002, the doctor recommended that plaintiff undergo an anterior cervical diskectomy, spondylectomy, osteophytectomy, bilateral foraminotomy, and partial corpectomy at the C3-4 and C4-5 levels. Dr. Detamore performed the surgery on 24 October 2002. At the time of plaintiff's surgery, defendants had not denied liability for plaintiff's neck condition. At some point after the surgery, however, defendants refused to cover the cost of the procedure.

Dr. Detamore ultimately expressed the opinion that the workplace incident necessitated the surgery he performed. He explained:

What [plaintiff] came to me for was complaints of pain which he said was in his low back and leg. The complaints of pain in my medical opinion was [sic] a combination of cervical myelopathy, cervical radiculopathy, spinal cord compression, and nerve root irritation which was brought on at the time of the lifting of this heavy weight. That's what caused those symptoms to become present even though he had the pre-existing condition of degenerative osteoarthritis.

He added that when he examined plaintiff, plaintiff "did come to me with this complaint of a lumbar radicular complaint only. And yet on my examination, I found not as much of a problem with a [sic] lumbar radicular symptoms and signs on his examination. I found more of cervical both myelopathy and radiculopathy and that his focus was primarily on a [sic] lumbar radicular symptoms."

Dr. Detamore retired after plaintiff's surgery and transferred plaintiff's care to Dr. Carol Wadon, another doctor from Carolina Neurosurgical Services. When Dr. Wadon initially examined plaintiff on 7 November 2002, plaintiff complained of numbness in his arms and difficulty turning his head. Dr. Wadon recommended a cervical MRI that revealed evidence of post-operative changes at C3-4 and C4-5 with some persistent stenosis. Dr. Wadon recommended that plaintiff undergo further cervical surgery that was performed on 27 November 2002.

On 17 January 2003, Dr. Wadon ordered an MRI that indicated mild multilevel spondylosis and degenerative disc disease most

prominent at the L4-5 and L5-S1 levels. On 27 February 2003, Dr. Wadon determined that plaintiff had reached maximum medical improvement and assigned a 10% permanent partial impairment rating to his low back. Rather than recommend additional surgery, Dr. Wadon referred plaintiff to pain management. Dr. Wadon concluded that plaintiff's cervical problems were the result of degenerative changes. Defendants did not pay for the 27 November 2002 surgery, but they did pay for treatment provided by Dr. Wadon on 27 February 2003 as well as the 17 January 2003 diagnostic tests.

Dr. Wadon referred plaintiff to Dr. Toni Harris at Eastern Carolina Pain Management for his low back and bilateral extremity pain. Dr. Harris diagnosed plaintiff with low back and bilateral lower extremity pain related to his workplace injury and neck and shoulder pain secondary to his fusion surgery. Dr. Harris treated plaintiff with epidural steroid injections for his back and a referral to physical therapy. Plaintiff was released from Dr. Harris' care on 15 October 2003. Dr. Harris determined that plaintiff had reached maximum medical improvement, and plaintiff was assigned a 5% permanent partial impairment rating to his low back. He recommended that plaintiff undergo a functional capacity evaluation.

On 28 July 2004, plaintiff filed a Form 18, reporting an injury to his back and legs as a result of the incident on 6 June 2002. On 4 October 2004, the functional capacity evaluation recommended by Dr. Harris was performed. The results of that evaluation indicated that plaintiff was capable of performing sedentary work. On 21 October 2004, plaintiff filed a Form 33, Request for Hearing, alleging injury to his upper, middle, and lower back.

Defendants filed a Form 33R and amended Forms 33R in response to plaintiff's request for hearing on 7 January, 11 January, and 9 March 2005 in which they notified the Commission that they refused to pay for plaintiff's neck treatment. In addition, on 9 March 2005, defendants submitted to the Commission a motion to dismiss for lack of jurisdiction, arguing that plaintiff had not timely filed a claim under N.C. Gen. Stat. § 97-24 (2007).

On 21 June 2005, Dr. Jaylan R. Parikh at Orthopedic Solutions & Sports Medicine Center performed an independent medical evaluation of plaintiff. Dr. Parikh concluded that plaintiff's cervical spine condition was not related to his work injury on 6 June 2002. He believed that plaintiff's neck condition was a continuation of neck problems that plaintiff experienced prior to the workplace incident.

In an opinion and award filed 24 February 2006, the deputy commissioner concluded that plaintiff had timely filed his claim and awarded plaintiff continuing temporary total disability benefits until such time plaintiff returned to work or until further order of the Commission. Additionally, the deputy commissioner ordered defendants to pay all medical expenses for plaintiff's cervical and lumbar spine injuries incurred as a result of the 6 June 2002 incident.

Defendants appealed to the Full Commission, and, in an opinion and award filed 24 August 2007, the Commission affirmed the opinion and award of the deputy commissioner with modifications. Chairman Buck Lattimore dissented. The Full Commission chose to give greater weight to the opinion of Dr. Detamore over the contrary opinions of Dr. Wadon and Dr. Parikh and, therefore, found that "Plaintiff's workplace injury by accident on June 6, 2002 significantly contributed to the cervical spine condition for which Dr. Detamore treated Plaintiff and performed surgery."

The Commission then concluded, "[b]ased on the greater weight of the evidence, Plaintiff suffered a compensable injury to his neck and back on June 6, 2002, as a direct result of a specific traumatic incident of the work assigned to him by Defendant-Employer." The Commission further determined that plaintiff's claim for compensation for his neck injury was not barred by N.C. Gen. Stat. § 97-24. The Commission noted, in any event, that defendants had not disputed plaintiff's entitlement to continuing temporary total disability compensation for his lower back injury. It further concluded that although defendants had terminated vocational rehabilitation assistance to plaintiff on 26 October 2004, plaintiff would benefit from such assistance. The Commission awarded plaintiff continuing temporary total disability benefits from the date of his 6 June 2002 injury continuing until further order of the Commission and ordered defendants to pay "all medical expenses incurred or to be incurred in the future for Plaintiff's cervical and lumbar spine injuries when bills for the same have been submitted and approved according to procedures adopted by the Industrial Commission." Defendants timely appealed to this Court.

I

[1] Defendants first contend the Full Commission erred in concluding that plaintiff's claim was not time barred under N.C. Gen. Stat. § 97-24 because plaintiff failed to file a claim for his neck injury with the Industrial Commission within two years of the accident. N.C. Gen. Stat. 97-24(a) provides:

The right to compensation under this Article shall be forever barred unless (i) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission or the employee is paid compensation as provided under this Article within two years after the accident or (ii) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article.

Failure to file a claim within the two-year period precludes the Industrial Commission from asserting jurisdiction over an employee's claim. *Crane v. Berry's Clean-Up & Landscaping, Inc.*, 169 N.C. App. 323, 328, 610 S.E.2d 464, 467, *disc. review denied*, 359 N.C. 630, 616 S.E.2d 230 (2005). As this Court noted in *Tilly v. High Point Sprinkler*, 143 N.C. App. 142, 146, 546 S.E.2d 404, 406, *disc. review denied*, 353 N.C. 734, 552 S.E.2d 636 (2001), when, as here, "a party challenges the Commission's jurisdiction to hear a claim, the findings relating to jurisdiction are not conclusive [on appeal,] and the reviewing court may consider all of the evidence in the record and make its own determination on jurisdiction."

Defendants concede that the Commission's jurisdiction was invoked when the Form 63 was filed on 10 July 2002, but argue that the Form 63 only invoked the Commission's jurisdiction over plaintiff's claim for his lumbar spine condition and not over his claim for his cervical spine condition. The Form 63 specifically acknowledged plaintiff's "claim" for "injury on 06/06/2002." Defendants did not purport to limit this claim to any particular body part or portion of the spine. Defendants, however, assert that "the Form 63 only related to the low back claim, as is evidenced by the totality of the record."

Defendants cite no authority to support their attempt to limit the jurisdiction of the Commission, and we have found none. As the Supreme Court recently observed, "[w]e have previously explained the context of the workers' compensation claim: 'The claim is the right of the employee, at his election, to demand compensation for such injuries as result from an accident.'" *Gore v. Myrtle/Mueller*, 362 N.C. 27, 34, 653 S.E.2d 400, 406 (2007) (quoting *Biddix v. Rex Mills, Inc.*, 237 N.C. 660, 663, 75 S.E.2d 777, 780 (1953)). In addition, this Court has previously held that a claim for benefits "is sufficient under N.C. Gen. Stat. § 97-24 if it identifies the accident and injury at issue and expresses an intent to invoke the Commission's jurisdiction with

respect to that injury." *Crane,* 169 N.C. App. at 329, 610 S.E.2d at 467. Here, the Commission's jurisdiction was invoked as to the accident on 6 June 2002, and plaintiff was entitled to seek compensation for such injuries as resulted from that accident.

This case involves a specific traumatic incident resulting in a back injury; the only dispute is over the portions of the back involved. We note that the evidence indicates that the cervical spine injury was not some new injury that arose long after the Form 63 was filed. Instead, this case from the beginning has involved a claim for a back injury, in which one of the expert witnesses ultimately determined that a cervical spine injury, as well as a lumbar spine injury, was contributing to the pain experienced by plaintiff following the accident. Such a determination must be made by a medical expert. *See Click v. Pilot Freight Carriers, Inc.,* 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (explaining that "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury"). In this case, defendants chose to invoke the jurisdiction of the Commission without further investigating the source of plaintiff's low back pain.

Those circumstances do not warrant limiting the jurisdiction of the Commission invoked by the Form 63. Under defendants' approach, an employee would be precluded from receiving compensation for not properly diagnosing his own injury and informing the defendant of that diagnosis. Such a result would be inconsistent with the principle recently affirmed by our Supreme Court in *Gore,* 362 N.C. at 36, 653 S.E.2d at 406 (internal quotation marks omitted), "that the Workers' Compensation Act requires liberal construction to accomplish the legislative purpose of providing compensation for injured employees, and that this overarching purpose is not to be defeated by the overly rigorous technical, narrow and strict interpretation of its provisions."

In any event, even if plaintiff's cervical spine condition required the filing of its own claim, that claim falls within N.C. Gen. Stat. § 97-24(a)(ii), providing that a claim is timely when filed "within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established . . . ." The Commission found, with respect to § 97-24(a)(ii) that "[d]efendants paid for the following treatment by Dr. Detamore: the August 14, 2002 treatment was paid

on October 29, 2002; the September 12, 2002 treatment was paid on October 28, 2002; the October 3, 2002 treatment was paid on April 1, 2003." This treatment included treatment for plaintiff's cervical spine condition. Plaintiff's 21 October 2004 Form 33, requesting a hearing on plaintiff's claim of injury to the "Upper/Middle/Lower Back, left & right legs," falls within two years of the payment of this medical compensation. *See, e.g., McGhee v. Bank of Am. Corp.*, 173 N.C. App. 422, 426, 618 S.E.2d 833, 836 (2005) (holding that although plaintiff did not file her claim within two years of her accident, her claim was timely filed because it was filed within the two-year period following defendants' last payment of medical compensation to plaintiff).

Defendants, however, contend that the payment of this compensation should not render plaintiff's claim timely as to the cervical spine aspect of his injury because "Defendants have never paid for any medical compensation related *solely* to Plaintiff's neck." (Emphasis added.) There is no dispute that the treatment provided by Dr. Detamore related, in part, to plaintiff's cervical spine. Defendants have cited no authority to support their proposition that N.C. Gen. Stat. § 97-24(a)(ii)'s previous medical compensation must be confined solely to one particular area of a larger injury. We, therefore, conclude that defendants have failed to demonstrate that plaintiff's claim is untimely under § 97-24(a)(ii).

Finally, defendants argue that even if they did pay medical compensation to plaintiff, plaintiff nonetheless was still required to file his claim for the neck injury within two years of the date of the accident. Although this argument is contrary to the plain language of the statute, defendants cite *Barham v. Kayser-Roth Hosiery Co.*, 15 N.C. App. 519, 521, 190 S.E.2d 306, 308 (1972), as support for their contention. *Barham*, however, construed a prior statute that did not include the language currently set out in N.C. Gen. Stat. § 97-24(a)(ii). *Barham* was, in fact, superceded by that statute. We, therefore, hold that the Commission was correct in concluding that plaintiff's claim for compensation was not barred by N.C. Gen. Stat. § 97-24.

II

**[2]** Defendants next contend the Full Commission erred in finding that plaintiff's neck condition was causally related to the 6 June 2002 accident. Defendants first argue that plaintiff's cervical condition did not arise out of his employment at Lear Siegler, and thus he is not entitled to compensation for that injury. As this argument dovetails with their second contention that plaintiff failed

to prove the causation element of his claim because his expert's testimony was only speculation and conjecture, we address both arguments simultaneously.

Apart from the issue of jurisdiction, appellate review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371, *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). The Commission's findings of fact may be set aside only if there is a "complete lack of competent evidence to support them." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). This Court reviews the Commission's conclusions of law de novo. *Deseth v. LensCrafters, Inc.*, 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).

The Commission made the following findings with respect to whether plaintiff's cervical spine condition was caused by his workplace accident:

> 27. Both Dr. Parikh and Dr. Wadon opined that Plaintiff's cervical condition was due to degenerative conditions. Dr. Detamore opined that Plaintiff's complaints of pain resulted from a combination of cervical myelopathy, cervical radiculopathy, spinal cord compression, and nerve root irritation which was brought on by his workplace injury. The Full Commission gives greater weight to the opinions of Dr. Detamore over the contrary opinions of Dr. Wadon and Dr. Parikh and finds that Plaintiff's workplace injury by accident on June 6, 2002 significantly contributed to the cervical spine condition for which Dr. Detamore treated Plaintiff and performed surgery. Plaintiff began treatment with Dr. Detamore approximately six weeks after his workplace accident. Plaintiff did not treat with Dr. Wadon until approximately four and one half months later and Dr. Parikh performed the [independent medical examination] approximately three years later. Dr. Detamore was tendered as an expert in neurosurgery and he performed a complete evaluation of Plaintiff.

> 28. Based on the greater weight of the evidence, Plaintiff suffered a compensable injury to his neck and back on June 6,

2002, as a direct result of a specific traumatic incident of the work assigned to him by Defendant-Employer.

The question before this Court is whether these findings of fact are supported by any competent evidence.

In arguing that they are not supported, defendants first point to statements by plaintiff limiting his complaints to the lower back area and his testimony that he felt a pop in his back rather than a pop in his neck. It is, however, well established that questions of causation require expert testimony. *See Click*, 300 N.C. at 167, 265 S.E.2d at 391. Specifically, we believe that what sort of "pop" a particular injury would make or where an injury's symptoms would manifest themselves are questions that must be answered by an expert. Plaintiff, who is not a medical doctor, was not competent to diagnose himself, and his statements cannot render Dr. Detamore's testimony incompetent, especially when Dr. Detamore specifically recognized and considered the fact that plaintiff was complaining about only his lower back pain when he was evaluated by Dr. Detamore.

Next, defendants argue that "[t]he overwhelming evidence shows that the plaintiff's cervical condition was not related to his workers' compensation injury." Although defendants acknowledge that the Commission found Dr. Detamore's testimony entitled to greater weight than the testimony of Dr. Parikh and Dr. Wadon, upon which defendants rely, defendants argue that Dr. Detamore's testimony was not competent because he could not conclude to a reasonable degree of medical certainty that plaintiff's neck injury was the result of the workplace accident.

This court has repeatedly held that a doctor is not required to testify to a reasonable degree of medical certainty. *See Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 599, 532 S.E.2d 207, 211 (2000). *See also Davis v. Columbus County Sch.*, 175 N.C. App. 95, 101, 622 S.E.2d 671, 676 (2005) (citing *Peagler* and stating that "[e]xpert testimony need not show that the work incident caused the injury to a reasonable degree of medical certainty"). All that is required is that it is "likely" that the workplace accident caused plaintiff's injury. *See Cannon v. Goodyear Tire & Rubber Co.*, 171 N.C. App. 254, 264, 614 S.E.2d 440, 447 (explaining that "when expert testimony establishes that a work-related injury 'likely' caused further injury, competent evidence exists to support a finding of causation"), *disc. review denied*, 360 N.C. 61, 621 S.E.2d 177 (2005); *Workman v. Rutherford*

*Elec. Membership Corp.*, 170 N.C. App. 481, 495, 613 S.E.2d 243, 252 (2005) (holding that expert's testimony that plaintiff's workplace injury "more likely than not" caused plaintiff's injury was sufficient to prove causation).

In this case, Dr. Detamore testified that although he could not say to a reasonable degree of medical certainty whether the workplace accident caused plaintiff's neck injury, he "would have to say it is more likely" that the accident caused plaintiff's neck injury. This testimony met the required standard and, therefore, is sufficient to support the Commission's finding of a causal connection between the workplace accident and plaintiff's cervical spine condition.

Defendants also argue that Dr. Detamore's deposition contained inconsistent testimony and that portions of it could be viewed as supportive of their position. As Judge Hudson stated in a dissenting opinion adopted by the Supreme Court in *Alexander v. Wal-Mart Stores, Inc.*, 359 N.C. 403, 610 S.E.2d 374 (2005) (*per curiam*), it is not "the role of this Court to comb through the testimony and view it in the light most favorable to the defendant, when the Supreme Court has clearly instructed us to do the opposite. Although by doing so, it is possible to find a few excerpts that might be speculative, this Court's role is not to engage in such a weighing of the evidence." *Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 573, 603 S.E.2d 552, 558 (2004) (Hudson, J., dissenting). We will not second-guess the Commission's credibility and weight determinations and, therefore, we uphold the Commission's finding of causation.

III

[3] Finally, defendants contend the Commission incorrectly calculated plaintiff's average weekly wage. The Commission found that "[p]laintiff's average weekly wage is $662.06, yielding a compensation rate of $441.40" pursuant to N.C. Gen. Stat. § 97-2(5) (2007). The Commission did not include in its opinion and award any explanation as to how it calculated plaintiff's average weekly wage.

The average weekly wage consists of "the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury." N.C. Gen. Stat. § 97-2(5). Defendants argue that the Commission should have used the first method set out in N.C. Gen. Stat. § 97-2(5) for calculating the average weekly wage—the method applicable when an employee has worked 52 weeks prior to

his injury without being absent from work for more than seven consecutive calendar days. Under this method, the average weekly wage is calculated by totaling the employee's earnings for the 52 weeks prior to the injury and dividing that sum by 52. Although the statute provides alternative methods for calculating an employee's average weekly wage, it is well settled that " '[w]hen the first method of compensation *can* be used, it *must* be used.' " *Conyers v. New Hanover Cty. Schools*, 188 N.C. App. 253, 258-59, 654 S.E.2d 745, 750 (2008) (quoting *Hensley v. Caswell Action Comm., Inc.*, 296 N.C. 527, 533, 251 S.E.2d 399, 402 (1979)). Plaintiff has not suggested that any method other than the first method in § 97-2(5) should be used.

Here, the parties stipulated that "[p]laintiff's average weekly wage will be determined by a Form 22." It appears to us that application of the first method in § 97-2(5) to the figures in the Form 22 would result in an average weekly wage of $538.33. Since we cannot determine how the Commission reached the conclusion that plaintiff's average weekly wage should be $662.06, we remand for further findings of fact regarding plaintiff's average weekly wage. *See Boney v. Winn Dixie, Inc.*, 163 N.C. App. 330, 333, 593 S.E.2d 93, 96 (2004) (remanding to Commission where it did not clearly state the method used to calculate plaintiff's average weekly wage); *Barber v. Going West Transp., Inc.*, 134 N.C. App. 428, 437, 517 S.E.2d 914, 921 (1999) (remanding to the Commission where there were no findings indicating how the average weekly wage was derived).

Affirmed in part, remanded in part.

Judges WYNN and CALABRIA concur.