DAVIS REX MAULDIN, Employee, Plaintiff v. A.C. CORPORATION, Employer, ARGONAUT INSURANCE, PMA INSURANCE, LIBERTY MUTUAL INSURANCE, THE NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Carriers, Defendants

No. COA11-119

(Filed 15 November 2011)

## 1. Workers' Compensation—occupational disease—asbestosis

The Industrial Commission erred in a workers' compensation case by concluding that defendant Argonaut Insurance was the responsible carrier for plaintiff's asbestosis. The record did not contain evidence supporting the Commission's finding that plaintiff was last injuriously exposed to asbestos for 30 days, as required by N.C.G.S. § 97-57, during a seven month period while Argonaut was the insurance carrier.

## 2. Workers' Compensation—occupational disease—laryngeal cancer

The Industrial Commission erred in a workers' compensation case by finding and concluding defendant Argonaut Insurance was the carrier responsible for compensation related to plaintiff's laryngeal cancer. The case was remanded for the Commission to make findings of fact regarding whether plaintiff's exposure to asbestos during Argonaut's policy period proximately augmented his laryngeal cancer.

## 3. Workers' Compensation—occupational disease—lymph node cancer—pleural plaquing

The Industrial Commission did not err in a workers' compensation case by awarding compensation for lymph node cancer and pleural plaquing even though plaintiff did not file a claim for either disease. The Commission may award compensation for all conditions within the chain of causation flowing from a compensable condition.

## 4. Workers' Compensation—maximum compensation rate—calculation of average weekly wage

The Industrial Commission erred in a workers' compensation case by awarding plaintiff the maximum compensation rate for 2007 when he was disabled and last worked and earned wages in 1997. The case was remanded to the Commission for reconsideration of the amount of weekly disability benefits to which plaintiff was entitled.

**MAULDIN v. A.C. CORP.**

[217 N.C. App. 36 (2011)]

Judge BEASLEY concurring in part and dissenting in part.

Appeal by defendant Argonaut Insurance from opinion and award entered 28 September 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 8 June 2011.

*Wallace and Graham, P.A., by Edward L. Pauley, for plaintiff-appellee.*

*McAngus, Goudelock & Courie, P.L.L.C., by Charles D. Cheney and Daniel L. McCullough, for defendants-appellants A.C. Corporation and Argonaut Insurance.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by M. Duane Jones, for defendant-appellee PMA Insurance.*

*Mullen Holland & Cooper, P.A., by John H. Russell, Jr., for defendants-appellees A.C. Corporation and Liberty Mutual Insurance Company.*

GEER, Judge.

Defendants Argonaut Insurance and A.C. Corporation appeal from an opinion and award finding that Argonaut was the carrier on the risk for plaintiff's asbestos-related occupational illnesses, the damage to his organs, and his resulting total disability. We have found no error with respect to the Commission's decision regarding plaintiff's lung cancer, lymph node cancer, and pleural plaquing. Based on our review of the record, however, we hold that the evidence does not support the Commission's determination that Argonaut was the responsible carrier for plaintiff's asbestosis. Further, while the record would support a determination that Argonaut is the responsible carrier with respect to plaintiff's laryngeal cancer, the Commission failed to make findings of fact sufficient to support its conclusion of law on that issue. Finally, the Commission failed to make adequate findings of fact and conclusions of law as to plaintiff's average weekly wage. We, therefore, affirm in part and reverse and remand in part.

Facts

Plaintiff began working for defendant employer A.C. Corporation in 1971 as a welder and pipefitter. He was employed by A.C. Corporation in 1971, from 1976 until 1977, and again from 3 March 1980 until June 1997. Plaintiff replaced and performed maintenance work on pipes, boilers, and heating and air conditioning units for various clients

throughout the country that contracted with A.C. Corporation for such services. For the last 10 years of his employment, plaintiff was a foreman. In this position, plaintiff continued to perform the same job but had the added responsibility of supervising other A.C. Corporation employees.

In performing his job, plaintiff was required to climb around and stand or lie on insulation covering pipes and equipment. When repairing the pipes and equipment, he would have to remove insulation, which resulted in his being covered in a significant amount of dust. Plaintiff also replaced gaskets located at the joints of pipes, which generated dust from the insulation. Plaintiff, along with his supervisors and co-workers believe most of the insulation and some of the gaskets he worked with and around contained asbestos.

Plaintiff was diagnosed with laryngeal cancer in 1997. As a result, he underwent surgery to remove his larynx and portions of his neck. This surgery left him unable to talk without the assistance of a mechanical voice box. He breathes through a "stoma," which is a hole in his neck. A.C. Corporation told plaintiff that he could no longer perform his job because he could not communicate effectively. Plaintiff has not worked since 1997.

Plaintiff was not advised by any doctor that his laryngeal cancer was related to his employment with A.C. Corporation until 2007. In the meantime, plaintiff applied for and was approved for social security disability.

In 2007, plaintiff was diagnosed with lung cancer and underwent radiation and chemotherapy. He is still receiving treatment for lung cancer. During his treatment, chest x-rays revealed abnormalities in addition to the cancer. His treating physicians then diagnosed him with asbestosis.

On 6 March 2008 plaintiff filed a workers' compensation claim alleging that his asbestosis and lung cancer were the result of his occupational exposure to asbestos. Plaintiff subsequently filed an amended claim alleging that his asbestosis, lung cancer, and laryngeal cancer were all related to his asbestos exposure. A.C. Corporation had insurance coverage with several different providers over the course of plaintiff's employment. All defendants denied plaintiff's claim.

Following a hearing on 15 June 2009, the deputy commissioner filed an opinion and award on 25 March 2010 finding that plaintiff's laryngeal cancer, lung cancer, lymph node cancer, asbestosis, and

pleural plaques were compensable occupational diseases and that plaintiff has been totally disabled as a result of his laryngeal cancer since 1 July 1997. The deputy commissioner further found that defendant Argonaut is the responsible carrier. The deputy commissioner awarded permanent total disability in the amount of $786.00 per week beginning 1 July 1997, $20,000.00 for damage to plaintiff's lungs due to lung cancer, $20,000.00 for lung damage from asbestosis, and $10,000.00 for damage to four lymph nodes resulting from lymph node cancer. Defendants Argonaut and A.C. Corporation appealed to the Full Commission.

On 28 September 2010, the Full Commission entered an opinion and award affirming and modifying the opinion and award of the deputy commissioner. Like the deputy commissioner, the Full Commission concluded that plaintiff's laryngeal cancer, lung cancer, lymph node cancer, asbestosis, and pleural plaques were all compensable occupational diseases and that plaintiff has been totally disabled pursuant to N.C. Gen. Stat. § 97-29 as a result of his laryngeal cancer since 1 July 1997. The Commission further found that Argonaut is the responsible carrier and liable for payment of compensation pursuant to N.C. Gen. Stat. § 97-57.

The Commission modified the deputy commissioner's opinion and award by awarding compensation of $754.00 per week beginning 1 July 1997, $40,000.00 for damage to plaintiff's lungs from lung cancer and asbestosis, and $20,000.00 for damage to plaintiff's lymph nodes from cancer to the lymph nodes. The Commission also concluded that plaintiff is entitled to medical treatment incurred or to be incurred related to his asbestosis, laryngeal cancer, lung cancer, pleural plaquing, and lymph node cancer pursuant to N.C. Gen. Stat. §§ 97-25 and 97-25.1. Defendants Argonaut and A.C. Corporation timely appealed to this Court.

## Discussion

"[A]ppellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The "findings of fact are conclusive on appeal if supported by competent evidence. This is true even if there is evidence to support a contrary finding." *Nale v. Ethan Allen*, 199 N.C. App. 511, 514, 682 S.E.2d 231, 234, *disc. review denied*, 363 N.C. 745, 688 S.E.2d 454 (2009).

## I.  Argonaut's Liability for Plaintiff's Compensable Conditions

### A.  Plaintiff's Asbestosis Claim

**[1]** Defendant Argonaut first challenges the Commission's determination that Argonaut was the responsible carrier for plaintiff's asbestosis. N.C. Gen. Stat. § 97-57 (2009) sets out the basis for determining which carrier is responsible for compensation due for occupational diseases:

> In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.

> For the purpose of this section when an employee has been exposed to the hazards of asbestosis or silicosis for as much as 30 working days, or parts thereof, within seven consecutive calendar months, such exposure shall be deemed injurious but any less exposure shall not be deemed injurious; provided, however, that in the event an insurance carrier has been on the risk for a period of time during which an employee has been injuriously exposed to the hazards of asbestosis or silicosis, and if after insurance carrier goes off the risk said employee is further exposed to the hazards of asbestosis or silicosis, although not so exposed for a period of 30 days or parts thereof so as to constitute a further injurious exposure, such carrier shall, nevertheless, be liable.

The first paragraph of N.C. Gen. Stat. § 97-57 applied to plaintiff's lung cancer, laryngeal cancer, lymph node cancer, and pleural plaques. The second paragraph governed as to plaintiff's asbestosis.

With respect to plaintiff's asbestosis, the Commission found, as required by N.C. Gen. Stat. § 97-57, that "[p]laintiff's last injurious exposure to the hazards of asbestos in excess of thirty (30) working days, or parts thereof, within seven (7) consecutive months occurred during his employment with Defendant-Employer during 1997." Because Argonaut insured the defendant employer during 1997, the Commission concluded that Argonaut was the responsible carrier for plaintiff's asbestosis.

We agree with Argonaut that the record does not contain evidence supporting the Commission's finding that plaintiff was last injuriously exposed to asbestos for 30 days during a seven month

period while Argonaut was the carrier on the insurance. Plaintiff and defendant PMA Insurance Group point to plaintiff's testimony that he believed the last time he would have been exposed to asbestos for more than 30 days within a six-month period "was probably there at Kimberly-Clark in South Carolina while we were doing all the units on the roof." While both plaintiff and PMA Insurance claim that plaintiff testified this job took place in January 1997, plaintiff stated that the last time he was at the Kimberly-Clark plant "was back about '86 or '87." He repeatedly and expressly denied working at the Kimberly-Clark plant in 1997.

On appeal, plaintiff points to A.C. Corporation job logs indicating that plaintiff worked on the Kimberly-Clark plant project from 19 January 1997 through 23 February 1997. Those logs, however, included both employees working at the actual job site as well as employees who were performing work for the project at one of A.C. Corporation's shops. The A.C. Corporation project director, who was responsible for scheduling workers in the field, explained that "[y]ou have to look further than [the logs] to see exactly whether [plaintiff] was at the job site or whether he was working in the shop under that job." The director testified that checking expenses was the only way to determine exactly at which job sites plaintiff worked during the pertinent years: "The expenses would be the dead giveaway because, I mean, you're going to get paid whether you're at a job site or in the shop, so the expenses were the primary thing that I saw."

The project director had determined that A.C. Corporation had not paid plaintiff any expenses during the time frame listed on the job log: "And guys don't go out of town and work for free, so that was a dead giveaway that that was a shop project that [plaintiff] was involved with . . . ." The record contains no contrary evidence. Indeed, plaintiff himself confirmed, in his testimony, that the logs contained inaccuracies regarding where he physically worked. The fact that plaintiff may have worked on the Kimberly-Clark plant project, although in the shop, is not sufficient to support the Commission's finding that plaintiff was exposed to asbestos for 30 days in 1997.

Plaintiff stated that he was last exposed to asbestos at the Allied facility, where he was working at the end of his employment at A.C. Corporation, which was in 1997. Plaintiff, however, reported only working at the Allied facility for "two or three weeks" and specifically denied having worked at the Allied facility for 30 days. Before work-

ing at the Allied facility, plaintiff worked for A.C. Corporation at a Revlon plant, which no party contends contained asbestos.

Since plaintiff specifically denied being present at Kimberly-Clark's plant in 1997—the last job that he recalled meeting the 30-day requirement of N.C. Gen. Stat. § 97-57—the record contains no evidence meeting the standard in N.C. Gen. Stat. § 97-57 for holding Argonaut responsible for plaintiff's asbestosis. We, therefore, must reverse as to plaintiff's asbestosis and remand to the Commission for a determination of (1) when plaintiff was last exposed to asbestos for 30 days within a seven-month period and (2) the carrier who was insuring A.C. Corporation during that time frame.

Argonaut asserts that "this Court should also reverse the award [of] benefits for [asbestosis]," but does not specifically discuss those benefits. Apart from medical expenses, the Commission awarded plaintiff "$40,000 for damage to the lungs from lung cancer and lung asbestosis." This award was based on the Commission's conclusion that plaintiff is entitled to compensation for damage to an organ, his lungs, caused by both asbestosis and lung cancer. Argonaut has not requested any relief from this Court regarding the lung cancer. Thus, while Argonaut is not liable for the lung damage to the extent it was caused by asbestosis, it is liable to the extent that the damage arose out of the lung cancer.

Consequently, on remand, the Commission must also determine whether it can apportion the damage to the lungs resulting from the asbestosis and from the lung cancer. If the damage cannot be apportioned, then the Commission must hold Argonaut and the carrier the Commission determines is liable for the asbestosis jointly and severally liable. *See Newcomb v. Greensboro Pipe Co.*, 196 N.C. App. 675, 682, 677 S.E.2d 167, 171 (2009) (holding that when plaintiff suffered two injuries with different employer responsible for each injury and when Commission could not determine percentage of disability attributable to each injury, "both employers became responsible for the full amount, resulting in joint and several liability").

### B. Plaintiff's Claim for Laryngeal Cancer

[2] Argonaut next contends that the Commission erred when it found and concluded that it was the carrier responsible for compensation related to plaintiff's laryngeal cancer. Pursuant to the first paragraph of N.C. Gen. Stat. § 97-57, the insurance carrier for A.C. Corporation at the time when plaintiff was last exposed to the hazards of laryngeal cancer is the responsible carrier. Our Supreme Court has explained that

MAULDIN v. A.C. CORP.

[217 N.C. App. 36 (2011)]

it is not necessary that claimant show that the conditions of her employment with defendant caused or significantly contributed to her occupational disease. She need only show: (1) that she has a compensable occupational disease and (2) that she was "last injuriously exposed to the hazards of such disease" in defendant's employment. *The statutory terms "last injuriously exposed" mean "an exposure which proximately augmented the disease to any extent, however slight."*

*Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 89, 301 S.E.2d 359, 362 (1983) (emphasis added) (quoting *Haynes v. Feldspar Producing Co.*, 222 N.C. 163, 166, 169, 22 S.E.2d 275, 277, 278 (1942)).

Here, the Commission found generally that "[p]laintiff's employment with Defendant-Employer exposed him to asbestos which in turn was a causative factor in his development of laryngeal cancer, lung cancer, asbestosis, and pleural plaquing." With respect to the last injurious exposure, the Commission found that "[p]laintiff was last exposed to asbestos the last week of his employment with Defendant-Employer which was on or about June 20, 1997" and that "[t]herefore, Argonaut Insurance was the carrier on risk at the time of Plaintiff's last injurious exposure."

Argonaut does not challenge the Commission's finding that plaintiff was last exposed to asbestos during his last week at work in 1997. Argonaut points out, however, that the Commission failed to find that this exposure proximately augmented the disease to any extent, however slight, as required by *Rutledge*, 308 N.C. at 89, 301 S.E.2d at 362. We agree that the general finding that plaintiff's laryngeal cancer was caused by his exposure to asbestos during his employment with A.C. Corporation does not establish that plaintiff's exposure during 1997 proximately augmented his laryngeal cancer. We must, therefore, remand for the Commission to make findings of fact regarding whether plaintiff's exposure to asbestos during Argonaut's policy period proximately augmented his laryngeal cancer to any extent, however slight.

Argonaut, however, further argues that the expert testimony shows that exposure during Argonaut's coverage period did not sufficiently contribute to plaintiff's laryngeal cancer due to the latency period between asbestos exposure and the development of laryngeal cancer. The expert testimony was, in fact, conflicting. While Argonaut points to expert evidence supporting its view that the exposure in 1997 was not sufficient, the record also contains expert testimony

that would allow the Commission to find that the exposure during Argonaut's policy period did proximately augment plaintiff's laryngeal cancer to some extent, even though it may have been a slight extent. It is the responsibility of the Commission to decide the credibility and weight to be afforded to the testimony of the various expert witnesses.

Argonaut misreads *Jones v. Beaunit Corp.*, 72 N.C. App. 351, 354, 324 S.E.2d 624, 626 (1985), when it argues that "[a]s in Jones, the medical evidence in this case shows that Plaintiff's exposure to asbestos had reached a *point of saturation* and was unaffected by any additional exposure at the Allied Chemical plant in June 1997." In *Jones*, the Court simply referenced "point of saturation" as an alternative way of saying that further exposure to the hazardous conditions had not augmented the disease to any extent. *Id.*

The Court concluded in *Jones* that the evidence showed that no point of saturation had been reached and that the plaintiff's last injurious exposure to the hazards which augmented his occupational disease occurred after responsibility for the risk shifted from one carrier to another. *Id.* In support of that conclusion, the Court pointed to the fact that (1) "plaintiff was employed by defendant employer until he was no longer able to work due to his breathing problem," (2) "plaintiff was exposed to dust and fumes from the machine he operated and from the adjacent room," and (3) "[p]laintiff thus worked at the same company under the same deleterious conditions for the duration of his employment." *Id.* The same could be found in this case. *Jones*, therefore, would permit the Commission to conclude that Argonaut is the carrier on the risk as to plaintiff's laryngeal cancer.

## C. Plaintiff's Claim for Lymph Node Cancer and Pleural Plaquing

**[3]** Argonaut next contends that the Commission erred when it awarded compensation for lymph node cancer and pleural plaquing because plaintiff did not file a claim for either disease. The Commission awarded $20,000.00 for damage to plaintiff's lymph nodes due to lymph node cancer, as well as medical benefits. As for plaintiff's pleural plaques, the Commission ordered only that Argonaut pay for medical expenses related to treatment of the pleural plaques.

With respect to the lymph node cancer, the Commission found that "[p]laintiff's lymph node cancer is not a primary cancer, but rather is a natural and direct result of the metastasizing of [p]laintiff's lung cancer." It is well established that the Commission may award compensation for all conditions within the chain of causation flowing

from a compensable condition. *See Roper v. J. P. Stevens & Co.*, 65 N.C. App. 69, 74-75, 308 S.E.2d 485, 489 (1983) ("The Commission's award at present is not proper as it does not take into account all the complications of her injury."). The Commission was, therefore, entitled to award compensation for lymph node cancer based on the claim for lung cancer.

As for the pleural plaques, Argonaut has not demonstrated that the condition is sufficiently unrelated to plaintiff's asbestosis that his claim for asbestosis was inadequate to support a claim for pleural plaques as well. Argonaut cites no authority suggesting that the Commission lacked jurisdiction to award compensation for pleural plaquing. We hold that plaintiff's claim for asbestosis was sufficient to vest the Commission with jurisdiction over plaintiff's pleural plaquing. *See Erickson v. Siegler*, 195 N.C. App. 513, 521, 672 S.E.2d 772, 778 (2009) (holding that claim for lumbar spine condition was sufficient to vest Commission with jurisdiction for cervical spine condition because plaintiff should not "be precluded from receiving compensation for not properly diagnosing his own injury and informing the defendant of that diagnosis"; limiting jurisdiction would be contrary to the principal "that the Workers' Compensation Act requires liberal construction to accomplish the legislative purpose of providing compensation for injured employees, and that this overarching purpose is not to be defeated by the overly rigorous technical, narrow and strict interpretation of its provisions").

## II. Plaintiff's Compensation Rate

[4] Argonaut also contends that the Commission erred when it awarded plaintiff the maximum compensation rate for 2007 when he was disabled and last worked and earned wages in 1997. The Commission's opinion and award included the following conclusion of law: "Defendants failed to file a Form 22. Plaintiff's weekly compensation rate is set at $745.00 per week, the maximum compensation rate for 2007. N.C. Gen. Stat. § 97-2(5)." The Commission, however, made no findings of fact articulating its reason for this determination.

Pursuant to N.C. Gen. Stat. § 97-29 (2009), "where the incapacity for work resulting from the injury is total, the employer shall pay or cause to be paid, as hereinafter provided, to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of his average weekly wages, but not more than the amount established annually to be effective October 1 as provided herein, nor less than thirty dollars ($30.00) per week." An

employee's average weekly wage is determined in accordance with N.C. Gen. Stat. § 97-2(5) (2009).

N.C. Gen. Stat. § 97-2(5) sets out five methods for calculating an employee's average weekly wage:

> [1] "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52; [2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.
>
> [5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

Our Supreme Court has explained:

> This statute sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed, and in its opening lines, this statute defines or states the meaning of "average weekly wages." It is clear from its wording and the prior holdings of this Court that this statute establishes an order of preference for the calculation method to be used, and that the primary method, set forth in the first sentence, is to calculate the total wages of the employee for the fifty-two weeks of the year prior to the date of injury and to divide that sum by fifty-two.

MAULDIN v. A.C. CORP.

[217 N.C. App. 36 (2011)]

*McAninch v. Buncombe Cnty. Sch.*, 347 N.C. 126, 129, 489 S.E.2d 375, 377 (1997). *See also Hensley v. Caswell Action Comm., Inc.*, 296 N.C. 527, 533, 251 S.E.2d 399, 402 (1979) ("When the first method of compensation *can* be used, it *must* be used."). "The final method, as set forth in the last sentence, clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods." *McAninch*, 347 N.C. at 130, 489 S.E.2d at 378.

Here, the sole authority cited by the Commission as support for its conclusion of law was N.C. Gen. Stat. § 97-2(5). The Commission did not, however, specify which of the five methods it was using in calculating plaintiff's average weekly wage. While the parties assert that the Commission must have used the fifth method, the Commission made no finding that unjust results would occur if the other four methods were used instead, contrary to *McAninch*.

Plaintiff contends that the Commission was sanctioning Argonaut for failing to file a Form 22. Because of the lack of any findings of fact to support the average weekly wage determination, the lack of any reference to the Commission rules, and the lack of any reference to sanctions or penalties, we cannot conclude that the Commission was in fact sanctioning Argonaut.

Although Argonaut urges that this Court may review the determination of an employee's average weekly wage *de novo* and asks that we apply the first method under N.C. Gen. Stat. § 97-2(5), our Supreme Court has squarely held that the determination of the average weekly wage is for the Commission as the finder of fact. *McAninch*, 347 N.C. at 131, 489 S.E.2d at 378 ("Hence, the recalculation of plaintiff's average weekly wages by the Court of Appeals through application of the fifth computation method constituted an improper contravention of the Commissions's [sic] fact-finding authority, and specifically its finding of fairness in this case."). We instead apply the customary standard of review for workers' compensation cases. *Id.* ("When the Court of Appeals reviews a decision of the full Commission, it must determine, first, whether there is competent evidence to support the Commission's findings of fact and, second, whether the findings of fact support the conclusions of law.").

Our Supreme Court has, however, previously instructed:

> "[T]he court cannot ascertain whether the findings of fact are supported by the evidence unless the Industrial Commission reveals with at least a fair degree of positiveness what facts it

finds. It is likewise plain that the court cannot decide whether the conclusions of law and the decision of the Industrial Commission rightly recognize and effectively enforce the rights of the parties upon the matters in controversy if the Industrial Commission fails to make specific findings as to each material fact upon which those rights depend."

*Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 708, 599 S.E.2d 508, 513 (2004) (quoting *Thomason v. Red Bird Cab Co.*, 235 N.C. 602, 606, 70 S.E.2d 706, 709 (1952)).

Without further findings of fact explaining the basis for the Commission's average weekly wage determination in this case, we cannot effectively review that determination on appeal. We, therefore, reverse as to the Commission's average weekly wage determination and remand for further findings of fact. *See Pope v. Johns Manville*, ___ N.C. App. ___, ___, 700 S.E.2d 22, 33 ("[W]e conclude that the Commission erred by failing to adopt one of the first four methods for calculating claimant's average weekly wage set out in N.C. Gen. Stat. § 97-2(5) without making sufficient findings and conclusions to allow use of the fifth method for calculating a claimant's average weekly wage set out in that statutory provision. As a result, we remand this case to the Commission for reconsideration of the amount of weekly disability benefits to which Plaintiff is entitled . . . ."), *disc. review denied*, 365 N.C. 71, 705 S.E.2d 375 (2010). Nothing in this opinion is intended to express any view regarding what would be the proper average weekly wage under the circumstances of this case.

## Conclusion

We affirm the Commission's opinion and award as to plaintiff's claims for lung cancer, lymph node cancer, and pleural plaquing. We reverse the Commission's determination that Argonaut was the responsible carrier as to plaintiff's claim for asbestosis and remand for a determination of which carrier was on the risk at the time plaintiff was last exposed to asbestos for 30 working days, or parts thereof, within seven consecutive calendar months, in accordance with N.C. Gen. Stat. § 97-57. We further remand for findings of fact regarding apportionment as to the $40,000.00 award for damage to plaintiff's lungs.

While we hold that the record contains evidence sufficient to support a determination that Argonaut was the responsible carrier with respect to plaintiff's laryngeal cancer, we must remand for further

findings of fact addressing that issue. Finally, we reverse the Commission's determination of plaintiff's compensation rate and remand for further findings of fact and conclusions of law regarding plaintiff's average weekly wage.

Affirmed in part; reversed and remanded in part.

Judge BRYANT concurs.

Judge BEASLEY concurs in part and dissents in part in a separate opinion.

BEASLEY, Judge, concurring in part and dissenting in part.

I join the majority in affirming the Commission's opinion and award as to Plaintiff's claims for lung cancer and pleural plaquing. I also agree that there is sufficient evidence that Argonaut was the responsible carrier with respect to Plaintiff's laryngeal cancer and that we must remand for further findings and that we must reverse and remand on the issue of Plaintiff's average weekly wage.

However, after careful review of the record, I believe the Commission's determination that Defendant Argonaut was the responsible carrier for Plaintiff's asbestosis was supported by competent evidence. Accordingly, I would affirm the Commission's opinion and award as to Argonaut's responsibility for Plaintiff's asbestosis and the resulting damage to his lungs. To the extent that the majority holds otherwise, I respectfully dissent.

It is well settled in matters of worker's compensation that "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony," and thus "courts may set aside findings of fact only upon the ground they lack evidentiary support." *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). This Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains *any* evidence tending to support the finding." *Id.* at 434, 144 S.E.2d at 274.

The majority concludes that the record does not contain evidence supporting the Commission's finding that plaintiff was last injuriously exposed to asbestos for 30 days during a seven month period while Argonaut was the carrier on the insurance. In reaching this conclusion, the majority points to Plaintiff's testimony before the Commission, where he denied working at the Kimberly-Clark plant in 1997.

While Plaintiff did deny that he worked at the Kimberly-Clark plant in 1997, he also stated several times that he did not remember and indicated that if the job logs contradicted his statements he would rely on the logs rather than his memory. The majority acknowledges that logs from the Kimberly-Clark plant job in 1997 indicate that Plaintiff did work there at that time, but counters that those logs included employees who performed work at the actual job site as well as those performing work at one of A.C. Corporation's shops.

The Commission was in the best position to examine Plaintiff's testimony and the weight it should be accorded. Plaintiff's testimony was contradictory, and he stated multiple times that he did not remember all of his jobs. Given that the job in question occurred more than ten years before the hearing, the Commission could competently have decided not to give Plaintiff's testimony much weight, and instead relied on the job logs. Although David Friddle, Project Director at A.C. Corporation, testified that an employee's name on a job log does not *necessarily* mean that employee was on site and not at an A.C. Corporation shop, certainly the employee's name on the log is an indication that the employee was on-site. Thus, I would hold that the Commission had enough evidence from which to conclude Argonaut was the responsible carrier for Plaintiff's asbestos. Because I would affirm the finding that Argonaut is the responsible carrier for Plaintiff's asbestosis, it follows that I would hold Argonaut responsible for the damage to his lungs resulting from the asbestosis. Accordingly, I would also hold Argonaut liable for the entirety of the award of $40,000 for damage for Plaintiff's lungs resulting from his asbestosis and lung cancer.