VERAN RAWLS, Employee, Plaintiff v. YELLOW ROADWAY CORPORATION, Employer, SELF-INSURED (GALLAGHER BASSETT SERVICES, INC., Servicing Agent), Defendant

No. COA11-971

(Filed 21 February 2012)

**1. Workers' Compensation—disability—sufficiency of findings of fact**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff worker was disabled from 22 June 2007 through 20 June 2010 based on findings of fact 55 and 57.

**2. Workers' Compensation—injuries—sufficiency of finding of fact**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff's accident on 24 February 2005 resulted in left temporal lobe intracerebral hemorrhage, right temporal lobe contusion, subarachnoid hemorrhage, and post-traumatic brain injury concussion syndrome based on finding of fact 36.

**3. Workers' Compensation—disability—doctor testimony—credibility**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff was disabled based upon the opinion of a doctor. Contradictions in the testimony go to its weight, and the Commission is the sole judge of the credibility of witnesses.

**4. Workers' Compensation—failure to apportion disability—no scientific basis**

The Industrial Commission did not err in a workers' compensation case by failing to apportion plaintiff's disability. Finding of fact 56 revealed that there was really no scientific basis to apportion plaintiff's disability.

Appeal by defendants from opinion and award entered 23 March 2011 by the Full Commission. Heard in the Court of Appeals 11 January 2012.

*Henry N. Patterson, Jr. and Narendra K. Ghosh of Patterson Harkavy LLP, attorneys for plaintiff.*

*Henry C. Byrum, Jr. of Stiles, Byrum & Horne, LLP, attorney for defendants.*

ELMORE, Judge.

Yellow Transportation and Gallagher Basset Services, Inc. (together defendants) appeal from an opinion and award entered by the Full Commission in favor of Veran Rawls (plaintiff). The Commission awarded plaintiff total disability compensation from 24 February 2005 and continuing. After careful consideration, we affirm the decision of the Commission.

## I. Background

Plaintiff was employed by Yellow Transportation as an over-the-road truck driver for thirty-six years. He planned to retire on 21 April 2005. Towards the end of his career, plaintiff was scheduled to drive from Charlotte to Tampa, Florida three times a week, beginning at midnight on Sunday nights. On 23 February 2005, plaintiff drove from Charlotte to Tampa. At approximately 12:30 AM on 24 February 2005 he began his return trip to Charlotte. Plaintiff experienced a headache all day on 24 February. As plaintiff arrived in Charlotte, he was travelling on Interstate 77 towards his home terminal off Harris Boulevard. As plaintiff took the exit for Harris Boulevard, he blacked out and his truck veered off the road. Plaintiff suffered a head injury, and he was admitted to the neurologic intensive care unit at Presbyterian Hospital. The admitting physician determined that plaintiff had fainted.

While at the hospital, plaintiff was examined by several specialists. Dr. William Maggio, a neurosurgeon, ordered an MRI of plaintiff's brain. The MRI showed contusions in the left temporal lobe and right parietal lobe of his brain. Dr. Roy Majors, an orthopedic surgeon, also examined plaintiff. He noticed pain and swelling in plaintiff's right shoulder, and he recommended that plaintiff participate in physical therapy.

After being released from the hospital, plaintiff continued to experience 1) severe headaches, 2) right shoulder pain, 3) poor memory and concentration, 4) and issues with his balance. He initially sought treatment for these ailments from his primary care physician, Dr. Harold Albright. Dr. Albright had treated plaintiff for headaches

and some dizziness a few weeks prior to the accident. Following the accident, Dr. Albright treated plaintiff several times from 7 March 2005 through 26 July 2005. Dr. Albright determined that plaintiff was unable to return to work during that time period.

Plaintiff also sought treatment from Dr. Erik Borresen, a board-certified neurologist. Dr. Borresen opined that following the accident plaintiff could drive a standard car, but that plaintiff could not drive a commercial truck. Dr. Borresen also opined that plaintiff's 24 February 2005 accident was the result of a stroke.

Then, on 24 August 2005 plaintiff had a seizure while backing his car from his driveway. He was admitted to Presbyterian Hospital where he was examined by Dr. Michael Amira, a neurologist. Plaintiff was also examined again by both Dr. Albright and Dr. Borresen following the seizure. Dr. Albright opined that the seizure could have occurred as a result of the 24 February 2005 accident. Dr. Borresen opined that the most likely cause of the seizure was the 24 February 2005 accident.

In February 2006, Yellow Transportation arranged for an independent medical examination of plaintiff at Wake Forest University Baptist Medical Center by Dr. Charles Tegeler, professor in the Neurology Department. Dr. Tegeler opined that plaintiff's accident on 24 February 2005 was the result of either 1) fainting or 2) a stroke. Dr. Tegeler concluded that the accident caused plaintiff to have a traumatic brain injury, and that plaintiff had some impairment of his memory as a result of this injury. Dr. Tegeler also confirmed that it was reasonable to assume that plaintiff had suffered a seizure on 24 August 2005, when he was attempting to drive his car. Dr. Tegeler further concluded that it was highly probable that the accident on 24 February 2005 caused the seizure. Finally, Dr. Tegeler opined that plaintiff was capable of employment in some capacity at the time of the examination in February 2006. He also opined that plaintiff probably could have returned to work as early as August 2005, but not as a commercial truck driver.

Later that year, in November 2006, plaintiff hired John McGregor, a vocational rehabilitation counselor, to complete an assessment of whether he would be able to return to any kind of work. McGregor concluded that plaintiff was not a candidate for vocational rehabilitation services. McGregor stated that he could not find any cost-effective return to work option for plaintiff, and that he believed retirement was the best option for plaintiff.

'Also around this time, in December 2006, plaintiff returned to see Dr. Majors for treatment regarding pain in his right shoulder. Dr. Majors determined that the injury to plaintiff's right shoulder was caused by the 24 February 2005 accident. Dr. Majors performed surgery on that shoulder in January 2007, and plaintiff was then placed in physical therapy. By June 2007, Dr. Majors concluded that plaintiff had achieved "maximum medical improvement."

On 23 March 2010, Deputy Commissioner George T. Glenn entered an Opinion and Award, granting plaintiff compensation at the rate of $704.00 per week from 24 February 2005 through the present and continuing until such time as plaintiff returns to work or until further order of the Commission. Defendants appealed this decision to the Full Commission. On 28 September 2010, the Full Commission entered an Interlocutory Opinion and Award. In that opinion, the Commission found that the evidence of record was insufficient to permit a determination as to whether plaintiff was able to work after 22 June 2007. Accordingly, the Commission reversed, in part, the decision of Commissioner Glenn. The Commission limited the scope of plaintiff's award to compensation from 24 February 2005 through 22 June 2007. The Commission also reopened the record for the taking of additional evidence concerning plaintiff's ability to work.

As a result, Dr. P. Jeffrey Ewert, a clinical neuropsychologist, performed an evaluation of plaintiff on 17 June 2010 and 20 June 2010. Dr. Ewert also reviewed plaintiff's post-injury medical records. Dr. Ewert opined that plaintiff was not competitively employable as a result of the 24 February 2005 accident. Dr. Alexander A. Manning, a clinical neuropsychologist, also examined plaintiff. He performed his examinations on 21 December 2010 and 6 January 2011. Dr. Manning opined that plaintiff was unemployable as a result of the 24 February 2005 accident.

On 23 March 2011, the Full Commission issued a final Opinion and Award. The Commission found that "as a result of the injuries plaintiff sustained from his February 24, 2005 injury by accident, plaintiff has been unable to work from February 24, 2005, through present and continuing." Accordingly, the Commission awarded total disability benefits to plaintiff from 24 February 2005 through the present and continuing until plaintiff returns to suitable employment or upon further order. Defendants now appeal.

## II.  Standard of Review

Review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Richardson v. Maxim Healthcare/Allegis Group*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (quotations and citation omitted) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)).

## III.  Arguments

### A.  Plaintiff's disability

[1] Defendants raise four issues on appeal. First, defendants argue that the Commission erred in finding that plaintiff was disabled from 22 June 2007 through 20 June 2010. Specifically, defendants challenge findings of fact 55 and 57.

Finding of fact 55 summarizes Dr. Ewert's evaluation of plaintiff. Defendants argue that finding of fact 55 is not supported by competent evidence, because Dr. Ewert's testimony failed to establish that 1) he "performed an evaluation of plaintiff on June 17 and June 20, 2010," 2) he "reviewed plaintiff's post-injury medical records," 3) he opined that plaintiff's cognitive impairment was due to "plaintiff's February 24, 2005 accident which resulted in closed head injury, left temporal lobe intracerebral hemmorage (sic), right temporal lobe contusion, and subarachnoid hemmorage (sic)," and 4) he "opined that plaintiff is not competitively employable." Upon review of Dr. Ewert's testimony, we disagree.

Dr. Ewert testified that, under his direction, plaintiff was examined twice. First, Dr. Ewert himself conducted a "clinical interview" with plaintiff, and next a member of his staff conducted a series of tests on plaintiff. These examinations occurred on 17 June and June 20, 2010. Dr. Ewert also confirmed that he examined "a series of [plaintiff's] medical records" as well as a "summary of [plaintiff's] accident and subsequent care." Dr. Ewert further testified that plaintiff was suffering from a cognitive disorder and that "he has this disorder due to his closed head injury, the left temporal lobe, which was cerebral hemorrhage, the right temporal parietal lobe contusion subarachnoid hemorrhage." Finally, Dr. Ewert testified that "I don't believe [plaintiff is] competitively employable." We conclude that this

testimony supports the specific sections of finding of fact 55 to which defendants take issue. Accordingly, we conclude that finding of fact 55 is supported by competent evidence.

Defendants also challenge finding of fact 57 which states that "plaintiff has been unable to work from February 24, 2005, through present and continuing." Defendants argue that this finding of fact is contrary to the Commission's prior findings in the Interlocutory Opinion and Award. They argue that the only new evidence the Commission reviewed after entering the Interlocutory Opinion and Award was the testimony of Dr. Ewert and the testimony of Dr. Manning. Therefore, they contend that the Commission must have based finding of fact 57 only on the testimonies of Dr. Ewert and Dr. Manning. As such, they argue that finding of fact 57 was not supported by competent evidence, because neither Dr. Ewert nor Dr. Manning offered an opinion about plaintiff's inability to work between 22 June 2007 and the time they saw him in June 2010. We disagree.

In their brief defendants, argue that the Commission, in its Interlocutory Opinion and Award, found that "plaintiff had failed to prove disability after 22 June 2007." However, that argument is not supported by the record. In fact, the Commission found in its Interlocutory Opinion and Award that "[t]he evidence of record is *insufficient* to determine whether plaintiff was able to work after June 22, 2007." The Commission then concluded that "the Full Commission requires additional evidence before rendering a decision on the issue of temporary total disability from June 22, 2007, and continuing." That additional evidence was provided, in part, by the professional opinions of Dr. Ewert and Dr. Manning. Both doctors performed evaluations of plaintiff, and both doctors reviewed a collection of plaintiff's medical records. Dr. Ewert opined that "I don't believe [plaintiff is] competitively employable." Dr. Manning also opined that "[t]he severity of [plaintiff's] neuropsychological impairment would preclude any form of gainful employment." After reviewing this new evidence, as well as the evidence already of record, the Commission then entered its Final Opinion and Award, finding that plaintiff has been unable to work from 24 February 2005, through the present and continuing. Thus, we are not persuaded by defendants' argument that the Commission's finding of fact 57 was based *only* on the testimonies of Dr. Ewert and Dr. Manning.

RAWLS v. YELLOW ROADWAY CORP.

[219 N.C. App. 191 (2012)]

## B. Plaintiff's injuries

[2] The next issue defendants raise on appeal is that the Commission erred in finding that plaintiff's accident on 24 February 2005 resulted in left temporal lobe intracerebral hemorrhage, right temporal lobe contusion, subarachnoid hemorrhage, and post-traumatic brain injury concussion syndrome. In essence, defendants challenge finding of fact 36 concerning Dr. Tegeler's diagnosis of plaintiff's injuries. They argue that this finding was not supported by competent evidence. We disagree.

Page four of Dr. Tegeler's report dated 13 July 2006 states that in his opinion, plaintiff has suffered from a "[traumatic] brain injury related to a truck accident with resulting left temporal lobe intracerebral hemorrhage, right temporoparietal lobe contusion and subarachnoid hemorrhage and a post traumatic brain injury concussion syndrome." Thus, the language of the Commission's finding of fact 36 closely mirrors the language of Dr. Tegeler's report. Accordingly, we conclude that finding of fact 36 was supported by sufficient evidence.

## C. Dr. Ewert's opinion

[3] The next issue defendants raise on appeal is that the Commission erred in finding that plaintiff was disabled based upon the opinion of Dr. Ewert. Defendants assert that Dr. Ewert based his opinion on an incorrect diagnosis of plaintiff's injuries. We disagree.

Dr. Ewert testified that plaintiff suffered from a "cognitive disorder" that was "due to his closed head injury, the left temporal lobe, which was cerebral hemorrhage, the right temporal parietal lobe contusion subarachnoid hemorrhage." Defendants argue that the record does not support a finding that plaintiff suffered from the injuries mentioned by Dr. Ewert. However, these are the same injuries detailed in finding of fact 36. As we have already discussed, finding of fact 36 was supported by competent evidence. As such, we are unable to agree that Dr. Ewert based his opinion on incorrect information.

Defendants further assert that Dr. Ewert's testimony was, at times, inconsistent regarding plaintiff's injuries. However, "[c]ontradictions in the testimony go to its weight, and the Commission may properly refuse to believe particular evidence." *Harrell v. J. P. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835 (1980). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965). Accordingly, we

conclude that the Commission did not err in finding that plaintiff was disabled based upon the opinion of Dr. Ewert.

## D.  Apportionment

[4]  The final issue defendants raise on appeal is that the Commission failed to apportion plaintiff's disability. We disagree.

An employee is entitled to full compensation without apportionment "when the nature of the employee's total disability makes any attempt at apportionment between work-related and non-work-related causes speculative." *Errante v. Cumberland County Solid Waste Management*, 106 N.C. App. 114, 119, 415 S.E.2d 583, 586 (1992) (citation omitted). Here, the Commission's finding of fact 56 states that "Dr. Manning attempted to apportion the contributing factors for plaintiff's impairment, but he conceded that there is no scientific basis on which to apportion these contributing factors." Defendants assert that finding of fact 56 is not supported by Dr. Manning's testimony. Upon review of his testimony, we disagree with defendants.

Dr. Manning testified that if he "had to put a percentage on" the portion of plaintiff's disability that did not derive from his work-related accident, he would say "maybe 70 percent of it." However, Manning also testified "[t]hat's a quick assessment on my part. I don't think I've ever done that in the past, quite frankly." Manning further testified that "there's really no scientific basis to apportion" plaintiff's disability. We conclude that this testimony is sufficient to support the Commission's finding of fact 56. As such, the Commission did not err by failing to apportion plaintiff's disability.

### IV.  Conclusion

In sum, we affirm the decision of the Full Commission.

Affirmed.

Judges BRYANT and ERVIN concur.