IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-93

No. COA21-292

Filed 15 February 2022

I.C. No. 18-739436

DENNIS D. MAHONE, JR., Employee, Plaintiff,

v.

HOME FIX CUSTOM REMODELING, Employer, SELECTIVE INSURANCE, Carrier, Defendants.

Appeals by plaintiff and defendants from Opinion and Award entered 26 January 2021 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 January 2022.

> *Lennon, Camak & Bertics, PLLC, by S. Neal Camak and Michael W. Bertics, for plaintiff.*
>
> *Cranfill Sumner LLP, by Steven A. Bader and Jerri Simmons, for defendants.*

ARROWOOD, Judge.

¶ 1        Dennis D. Mahone, Jr., ("plaintiff") and Home Fix Custom Remodeling ("Home Fix") appeal from separate portions of the same order of the North Carolina Industrial Commission ("Commission"). Plaintiff contends the Commission applied the incorrect legal standard in determining whether plaintiff's traumatic brain injury ("TBI") was compensable. Home Fix and its insurance carrier, Selective Insurance (collectively, "defendants") contend the Commission erred in allowing plaintiff to seek

a new hearing on his claim for retroactive attendant care benefits, and abused its discretion by entering discovery sanctions. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

Home Fix is a home remodeling company that employs "Territory Sales Representatives" to canvas neighborhoods and engage with customers. Plaintiff was hired by Home Fix as a Territory Sales Representative on 6 July 2018. On 24 July 2018, during his second sales call, plaintiff climbed into the attic of a potential customer to take measurements for an insulation estimate and the floor beneath him collapsed. Plaintiff fell at least twenty feet and landed in the staircase area of the lower level of the home. EMS responded and found plaintiff unconscious and "slumped over a broken wooden [banister]." Plaintiff regained consciousness en route to the hospital.

When plaintiff arrived at the hospital, he complained of pain throughout his entire back, as well as numbness and tingling in his extremities. Dr. Matthew Alleman ("Dr. Alleman") observed that plaintiff had weakness in his extremities during the initial examination. An MRI indicated that plaintiff suffered significant injuries to his cervical and thoracic spine, including laminar fractures of vertebrae at C4, C5, C6, C7, T1, T2, T3, and T5, interspinous ligamentous tearing from C2 to T4, and "severe stenosis at C4-5, C5-6, and C6-7 as well as edema within the spinal cord

from C5-C7." Plaintiff also had two posterior rib fractures on his left side. A CT scan of plaintiff's head taken at the same time indicated "[n]o evidence of intracranial hemorrhage, mass effect or acute cortical stroke[,]" and a "[s]oft tissue hematoma overlying the superior left parietal bone."

¶ 4        After the initial examination and imaging, Dr. Conor Regan ("Dr. Regan") performed surgery on plaintiff. The surgery "included treatment of the C4 fracture, treatment and reduction of the C5 and C6 laminar fractures, treatment and reduction of the T2-T3 ligamentous injury, fusion of the vertebrae from C3 to T3, application of instrumentation from C3 to T3, laminectomies at C4, C5, C6 and C7," and an iliac crest bone graft. Dr. Regan conducted a follow-up appointment on 11 September 2018, where plaintiff reported "stiffness in his neck but no pain radiating into his arms." Dr. Regan recommended that plaintiff begin outpatient physical therapy.

¶ 5        Following surgery, Dr. Scott Moore ("Dr. Moore") conducted a cognitive screening and mental assessment on 27 July 2018 to evaluate plaintiff for a possible TBI. Dr. Moore noted that plaintiff had difficulty with "mental flexibility and verbal memory" and displayed "reduced processing speed/delayed response time in addition to variable attention at times[,]" as well as a depressed affect. Dr. Moore also observed that plaintiff reported high levels of pain during the evaluation, which may have "negatively impacted current cognitive abilities to an unclear extent." Dr. Moore

provided plaintiff with "[b]rief verbal and written information regarding mild TBI," but concluded that additional acute, inpatient neuropsychological services did "not appear warranted at [that] time."

¶ 6 Plaintiff was admitted to WakeMed Rehabilitation on 13 August 2018, where he underwent inpatient rehabilitation until his discharge on 31 August 2018. On 15 August 2018, Dr. Rochelle Lynn O'Neil ("Dr. O'Neil") performed a neurobehavioral assessment of plaintiff, observing that plaintiff had "reduced working memory abilities[,]" but otherwise "the majority of other cognitive abilities . . . were within normal limits." Dr. O'Neil noted that plaintiff "demonstrated improvements within language abilities, processing speed, and aspects of memory" since the 27 July 2018 screening.

¶ 7 On 30 July 2018, plaintiff completed and filed a Form 18 providing notice of the accident. Defendants denied plaintiff's claim, alleging there was no employee/employer relationship. On 8 August 2018, plaintiff filed a Form 33 request for an expedited hearing. On 13 September 2018, Defendants filed a Form 33R in response, again denying compensability. On 24 September 2018, Deputy Commissioner Ashley M. Moore ("Deputy Commissioner Moore") entered an order requiring defendants to fully respond to plaintiff's discovery requests.

¶ 8 The case was heard before Deputy Commissioner Moore on 1 October 2018. The issues presented included whether plaintiff was permanently and totally

disabled, to what attendant care compensation plaintiff was entitled, plaintiff's average weekly wage and compensation rate, whether defendants should be subject to a statutory penalty, and whether defendants should be assessed sanctions or attorney's fees. At the hearing, plaintiff testified from a wheelchair and needed to take multiple breaks during the hearing due to pain. Plaintiff testified that "he had trouble using the restroom, feeding himself, and administering his medication, and he had to rely upon his wife to assist him with those activities." Although plaintiff provided testimony regarding the assistance his wife provided, his wife did not testify at the hearing and was not deposed.

¶ 9       Following the hearing and subsequent mediation, defendants filed a Form 60 on 14 November 2018, admitting that plaintiff was an employee who had suffered a compensable accident, specifically admitting injuries to plaintiff's "spine, fractures to the second and third left-sided ribs, and hematoma on the parietal bone." Deputy Commissioner Moore held the record open for submissions through 30 January 2019.

¶ 10      Dr. Regan was deposed on 17 October 2018. Dr. Regan testified that plaintiff demonstrated "diminished sensation in his upper extremities[,]" with "remarkably decreased strength in the right upper and nothing in the right lower" extremities and "spared strength to some degree in the left upper, and more so in the left lower" extremities. These observations were consistent with a central spinal cord injury. Dr. Regan explained that plaintiff's right side was weaker than the left side because

of the "laminar fracture squeezing down on the right side of the spinal cord[.]" This was compounded by plaintiff's ligamentous injury where "he basically ripped through the ligaments that connect the back of the bones together," which created floating spinal masses that further compressed the spinal cord. Dr. Regan stated that plaintiff had regained some motor function and could use a walker to traverse short distances, but also acknowledged that plaintiff was in a wheelchair at a recent hearing and that plaintiff could not "walk very far."

¶ 11 On 2 November 2018, Dr. Lance L. Goetz ("Dr. Goetz") wrote a letter stating that plaintiff was hospitalized and under Dr. Goetz's care at the Richmond VA Spinal Cord Injury and Disorders Service. In the letter, Dr. Goetz indicated that plaintiff required, and continued to require, "aid and attendance from a trained caregiver . . . for the foreseeable future[,]" including "supervision, assistance with ADLs [activities of daily living], transfers, transportation, and ongoing medical care and monitoring." Dr. Goetz also stated in his letter that plaintiff had "incurred a traumatic brain injury with loss of consciousness and approximately [two] days of post-traumatic amnesia." Dr. Goetz was not deposed as part of this case.

¶ 12 On 4 June 2019, Deputy Commissioner Moore entered an Opinion and Award. Deputy Commissioner Moore found that plaintiff had failed to present evidence "as to how many hours per day he requires attendant care[,]" or "of the appropriate compensation rate" for plaintiff's wife as an attendant care provider. Deputy

Commissioner Moore also found that "while it is clear Plaintiff needs attendant care due to his compensable injuries," plaintiff had "presented no competent evidence to support such an award." Regarding plaintiff's claims for sanctions, Deputy Commissioner Moore found that plaintiff "failed to prove Defendants did not fully respond to Plaintiff's discovery requests" and declined to impose sanctions.

¶ 13 Deputy Commissioner Moore concluded that although plaintiff "is currently totally disabled from competitive employment, he is not yet at maximum medical improvement and thus it is not yet possible to determine whether Plaintiff meets the requirements for permanent and total disability . . . ." Deputy Commissioner Moore further concluded that plaintiff had failed to present evidence regarding the number of hours of attendant care plaintiff needed in the past and would need in the future, or regarding the rate at which plaintiff's wife should be compensated for attendant care. Regarding compensation, Deputy Commissioner Moore concluded that plaintiff's "average weekly wage [was] $1,692.31 which yields the maximum weekly benefit of $992.00" pursuant to N.C. Gen. Stat. § 97-29. Finally, Deputy Commissioner Moore concluded that plaintiff had failed to present evidence that defendants did not comply with the 24 September 2018 order and denied plaintiff's request for sanctions.

¶ 14 On 5 June 2019, plaintiff filed a Motion for Reconsideration requesting various amendments and clarifications. On 22 July 2019, Deputy Commissioner Moore filed

an amended Opinion and Award. Therein, Deputy Commissioner Moore concluded that defendants "shall provide medical treatment for Plaintiff's compensable injuries, namely, those listed on the Form 60 filed by Defendants: Plaintiff's spine, fractures to his second and third left-sided ribs, and hematoma on the parietal bone." Deputy Commissioner Moore also ordered that "Defendants shall pay medical expenses incurred, or to be incurred, as a result of Plaintiff's compensable injuries as may reasonably be required to effect a cure, provide relief, or lessen the period of disability." The remainder of the amended Opinion and Award was unchanged from the original 4 June 2019 Opinion and Award.

¶ 15    Plaintiff filed an appeal to the Full Industrial Commission on 6 August 2019. Plaintiff filed a corresponding Form 44 on 24 October 2019.

¶ 16    The Full Commission reviewed the matter on 10 December 2019 and entered an Opinion and Award on 26 January 2021. The Commission made findings summarizing the medical evidence presented at the hearing and subsequently received in discovery. The Commission found that "[a]lthough the medical records in this case indicate that Plaintiff was diagnosed with a mild TBI following the 24 July 2018 incident, the Full Commission finds Plaintiff presented no expert medical opinion evidence causally linking the 24 July 2018 incident with Plaintiff's traumatic brain injury." The Commission noted that "Dr. Regan was the only medical expert deposed in this matter, and he was neither asked for, nor independently

offered any opinion as to the causation of Plaintiff's TBI." Additionally, the Commission found that, "[w]hile Dr. Goetz wrote a letter to the Commission indicating that the TBI was related to the 24 July 2018 incident, he did not offer an opinion to a reasonable degree of medical certainty, and was not deposed by the parties." Accordingly, the Commission found that plaintiff was not entitled to ongoing medical compensation for his TBI.

¶ 17 Regarding attendant care benefits, the Commission found that plaintiff "requires attendant care to effect a cure, give relief, or lessen the period of his disability[,]" but that plaintiff "failed to present evidence as to how many hours per day he requires attendant care, or the appropriate compensation rate for [his wife] as the attendant care provider." The Commission found that there was "insufficient evidence upon which to base an award for either prospective or retroactive attendant care . . . ." Regarding compensation and plaintiff's average weekly wage, the Commission applied the same method for calculation as in Deputy Commissioner Moore's Opinion, finding that plaintiff's average weekly wage was $1,692.31, yielding a maximum weekly benefit of $992.00.

¶ 18 With respect to plaintiff's claim for discovery sanctions, the Commission found that on 20 August 2018, plaintiff served a series of requests for discovery, including forty-eight interrogatories and twenty-one requests for production of documents. On 21 September 2018, plaintiff filed a Motion to Compel, which Deputy Commissioner

Moore granted on 24 September 2018, requiring defendants to "answer and fully respond to Plaintiff's 20 August 2018 discovery requests by 5:00 p.m. on Wednesday, 26 September 2018." The Commission found that plaintiff filed a second Motion to Compel on 27 September 2018, arguing that defendants "failed to make a full response" with respect to several interrogatories and requests for production. The Commission noted that plaintiff's brief drew "attention to Defendants' failure to provide full answers to Interrogatories 8(d) and (e), which request detail regarding training courses and ratings or evaluations provided to Plaintiff." Specifically, "[w]hile Defendants provided Plaintiff with the sales manual introduced as part of Stipulated Exhibit 2, they did not produce the audio recordings later introduced as Plaintiff's Exhibit 2, which were largely provided to Plaintiff" during his initial training. The Commission found that the recordings, "which last over ten hours, contain detailed instructions given by [Home Fix's branch manager] to [plaintiff] and other trainees on sales techniques and procedures, and show Plaintiff was routinely given homework and was subject to evaluation during his two-week training course." Based upon a preponderance of the evidence, the Commission found that Home Fix "did not fully respond to Plaintiff's discovery requests and in doing so failed to comply with Deputy Commissioner Moore's 24 September 2018 Order[,]" and that this failure "was not based on an inability to comply[.]"

¶ 19        Based on the aforementioned findings of fact, the Commission concluded that

plaintiff was "entitled to medical treatment for his compensable injuries, namely, those listed on the Form 60 filed by Defendants." The Commission further concluded that based on plaintiff's evidence, including "his own testimony, his medical records, and Dr. Goetz's letter, . . . he is in need of attendant care, [and] the Full Commission concludes attendant care is reasonably necessary to effect a cure, provide relief, or lessen the period of Plaintiff's disability." Despite concluding that attendant care was reasonably necessary, the Commission concluded that it was "unable to award compensation for retroactive or prospective attendant care" due to the lack of evidence as to the number of hours of attendant care needed and the rate at which plaintiff's wife should be compensated.

¶ 20        In the Award, the Commission denied plaintiff's claim for permanent and total disability benefits and his claim for benefits for his TBI. The Commission ordered defendants to "pay ongoing temporary total disability benefits to Plaintiff at a rate of $992.00 per week beginning 24 July 2018 and continuing until further order of the Commission, less any amounts already paid by Defendants." The Commission also ordered defendants to "pay medical expenses incurred, or to be incurred, as a result of Plaintiff's compensable injuries as may reasonably be required to effect a cure, provide relief, or lessen the period of disability." Plaintiff's claim for attendant care benefits was denied, with the Award providing that "[i]f the parties are unable to agree to the number of hours and the rate of reimbursement for [plaintiff's wife's]

provision of attendant care to Plaintiff, the parties may request further hearing before the Industrial Commission pursuant to Rule 614 of the Workers' Compensation Rules." The Commission granted plaintiff's claim for discovery sanctions.

¶ 21 On 23 February 2021, plaintiff filed notice of appeal, limiting the appeal to the issue of denial of the compensability of plaintiff's TBI. On 1 March 2021, defendants cross-appealed.

## II.    Discussion

¶ 22 Both parties have appealed the Commission's order, with each appeal addressing separate issues. Plaintiff contends the Commission applied the incorrect legal standard in denying that plaintiff's TBI was compensable. Defendants contend the Commission erred in allowing plaintiff to seek a new hearing on his claim for retroactive care benefits and abused its discretion by entering discovery sanctions. We address each issue in turn.

### A.    Standard of Review

¶ 23 "[O]n appeal from an award of the Industrial Commission, review is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted). "This court's duty goes no further than to determine

whether the record contains any evidence tending to support the finding." *Id.* (citation and quotation marks omitted). "Even where there is evidence to support contrary findings, the Commission's findings of fact are conclusive on appeal if supported by any competent evidence." *Snead v. Carolina Pre-Cast Concrete, Inc.*, 129 N.C. App. 331, 335, 499 S.E.2d 470, 472 (1998) (citation omitted). If the Commission's findings "are predicated on an erroneous view of the law or a misapplication of the law, they are not conclusive on appeal." *Simon v. Triangle Materials, Inc.*, 106 N.C. App. 39, 41, 415 S.E.2d 105, 106 (1992) (citation omitted).

¶ 24 "The Commission's conclusions of law, however, are reviewable *de novo*." *Snead*, 129 N.C. App. at 335, 499 S.E.2d at 472 (citation omitted). The Commission's designation of various points as a "Finding of Fact" or "Conclusion of Law" are not conclusive; "[w]hether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law." *Brown v. Charlotte-Mecklenburg Bd. of Ed.*, 269 N.C. 667, 670, 153 S.E.2d 335, 338 (1967) (citation and quotation marks omitted).

¶ 25 "The decision to receive additional evidence is within the sound discretion of the Commission, and will not be reversed on appeal unless the Commission manifestly abuses its discretion." *Pittman v. Int'l Paper Co.*, 132 N.C. App. 151, 155, 510 S.E.2d 705, 708 (citation omitted), *aff'd*, 351 N.C. 42, 519 S.E.2d 524 (1999).

¶ 26 Our Supreme Court "has repeatedly held that our Workers' Compensation Act

should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents, and its benefits should not be denied by a technical, narrow, and strict construction." *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quotation marks omitted) (quoting *Hollman v. City of Raleigh,* 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968)).

## B.     Compensability of Injury

¶ 27         Plaintiff argues the Commission erred in denying that he was entitled to compensation for his TBI.  We agree.

¶ 28         N.C. Gen. Stat. § 97-82(b) provides that "[a]n employee may request a hearing pursuant to G.S. 97-84 to prove that an injury or condition is causally related to the compensable injury."  N.C. Gen. Stat. § 97-82(b) (2021).  "Under the North Carolina Workers' Compensation Act, an employee seeking benefits 'bears the burden of proving every element of compensability.' "  *Rogers v. Smoky Mountain Petroleum Co.*, 172 N.C. App. 521, 524, 617 S.E.2d 292, 295 (2005) (citation omitted).  "The degree of proof required of a claimant is the 'greater weight' or the preponderance of the evidence."  *Id.* (citation omitted).

¶ 29         If a case concerns "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury."  *Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (citation and quotation marks omitted).  "However,

when such expert opinion testimony is based merely upon speculation and conjecture, it can be of no more value than that of a layman's opinion. As such, it is not sufficiently reliable to qualify as competent evidence on issues of medical causation." *Young v. Hickory Bus. Furn.,* 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000). The evidence must "take the case out of the realm of conjecture and remote possibility," which requires "sufficient competent evidence tending to show a proximate causal relation." *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (citation omitted).

¶ 30 Expert testimony "as to the possible cause of a medical condition is admissible if helpful to the jury," but it may be insufficient to prove causation, particularly "when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation[.]" *Id.* at 233, 581 S.E.2d at 753 (citations and quotation marks omitted). "[I]t appears that our Supreme Court has created a spectrum by which to determine whether expert testimony is sufficient to establish causation in worker's compensation cases." *Cannon v. Goodyear Tire & Rubber Co.*, 171 N.C. App. 254, 264, 614 S.E.2d 440, 446 (2005). While expert testimony that a work-related injury "could" or "might" have caused further injury is insufficient to prove causation, expert testimony establishing that a work-related injury "likely" caused further injury is "competent evidence" to support a finding of causation. *Id.*, 614 S.E.2d at 446-47 (citations omitted).

¶ 31 "This court has repeatedly held that a doctor is not required to testify to a

reasonable degree of medical certainty." *Erickson v. Siegler*, 195 N.C. App. 513, 524, 672 S.E.2d 772, 780 (2009) (citations omitted). "All that is required is that it is 'likely' that the workplace accident caused plaintiff's injury." *Id.* (citations omitted).

¶ 32       In *Rawls v. Yellow Roadway Corp.*, the defendants challenged the Commission's finding with respect to a doctor's diagnosis of the plaintiff's injuries. *Rawls v. Yellow Roadway Corp.*, 219 N.C. App. 191, 197, 723 S.E.2d 573, 578 (2012). This Court disagreed, holding that the doctor's opinion, as stated in his report, was sufficient evidence to support the Commission's finding. *Id.* ("[T]he language of the Commission's finding of fact 36 closely mirrors the language of Dr. Tegeler's report. Accordingly, we conclude that finding of fact 36 was supported by sufficient evidence.").

¶ 33       In this case, the Commission determined that plaintiff "presented no expert medical opinion evidence causally linking the 24 July 2018 incident with Plaintiff's traumatic brain injury." The Commission found that Dr. Regan was the only medical expert deposed "and he was neither asked for, nor independently offered any opinion as to the causation of Plaintiff's TBI," and that "[w]hile Dr. Goetz wrote a letter to the Commission indicating that the TBI was related to the 24 July 2018 incident, he did not offer an opinion to a reasonable degree of medical certainty, and was not deposed by the parties."

¶ 34       Based on these findings, it appears the Commission required plaintiff to

present expert *testimony*, either at a hearing or deposition, to a reasonable degree of medical certainty, that his TBI was causally related to the accident. This is not the standard required by this Court. In order to establish causation, plaintiff was required to present expert *opinion evidence*, not necessarily in the form of testimony, that it was likely that the accident caused plaintiff's injury. As this Court held in *Rawls*, documentary evidence may be sufficient to support the Commission's finding with respect to causation. Although Dr. Goetz was not deposed and did not testify, his letter stated that plaintiff "has incomplete . . . tetraplegia due to a 25 foot fall through an attic . . . . He has also incurred a traumatic brain injury with loss of consciousness and approximately 2 days of post-traumatic amnesia." Dr. Goetz's letter was not speculative or guesswork, and constituted sufficient evidence to establish causation by a preponderance of the evidence. Notably, although the Commission determined that Dr. Goetz's letter was insufficient to causally link plaintiff's accident to his TBI, the Commission did consider Dr. Goetz's letter as evidence, citing the letter to support the conclusion that plaintiff was in need of attendant care.

¶ 35     We hold the Commission erred in denying plaintiff compensation for his TBI. Accordingly, we reverse the Commission's Opinion and Award with respect to the compensability of plaintiff's TBI and remand to the Commission to make findings and conclusions applying the correct standards of proof.

C.     New Hearing on Claim for Attendant Care Benefits

¶ 36     Defendants contend the Commission abused its discretion in allowing plaintiff to request another hearing under Workers' Compensation Rule 614.  Defendants describe this not as a fee dispute, but as a missed opportunity by plaintiff to present evidence of attendant care valuation.  Plaintiff, however, contends the Commission resolved the compensability question in plaintiff's favor and ordered the parties to attempt to reach an agreement on the reimbursement rate issue.

¶ 37     Under the Workers' Compensation Act, medical compensation may include "attendant care services prescribed by a health care provider authorized by the employer or subsequently by the Commission" to the extent that the services are reasonably necessary to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. § 97-2(19) (2021).  "The term 'health care provider' means physician, hospital, pharmacy, chiropractor, nurse, dentist, podiatrist, physical therapist, rehabilitation specialist, psychologist, and *any other person providing medical care* pursuant to this Article."  N.C. Gen. Stat. § 97-2(20) (emphasis added).

¶ 38     Our Courts have "authorized payment to family members for attendant care provided to an injured family member."  *London v. Snak Time Catering, Inc.*, 136 N.C. App. 473, 480, 525 S.E.2d 203, 208 (2000) (citing *Godwin v. Swift & Co.,* 270 N.C. 690, 155 S.E.2d 157 (1967)).  When determining the appropriate rate for attendant care provider fees, the Commission must consider factors including the

provider's expertise, the type of services rendered, and actual wages earned by an equivalent attendant care provider. *See Levens v. Guilford Cty. Schs.*, 152 N.C. App. 390, 399, 567 S.E.2d 767, 773 (2002) (considering evidence of attendant care services provided by plaintiff's family members).

¶ 39 Pursuant to Workers' Compensation Rule 614, if a health care provider fee dispute cannot be resolved, the health care provider "shall file a motion to intervene with the Commission." 11 N.C. Admin. Code 23A.0614(f). In accordance with N.C. Gen. Stat. § 97-90.1, "when a health care provider is allowed to intervene by the Commission, the intervention is limited to the medical fee dispute." 11 N.C. Admin. Code 23A.0614(k). "Discovery by a health care provider shall be allowed following a Commission order allowing intervention but is limited to matters related to the medical fee dispute." 11 N.C. Admin. Code 23A.0614(m).

¶ 40 In this case, the Commission received competent evidence that plaintiff required attendant care and made findings of fact and conclusions of law based on that evidence. The issue of the rate of compensation, however, was not resolved and remained in dispute. Accordingly, pursuant to Workers' Compensation Rule 614, plaintiff's wife was permitted to file a motion to intervene with the Commission. Rule 614 further provides that if the Commission grants a motion to intervene, discovery shall be allowed, limited to matters related to the medical fee dispute.

¶ 41 Defendants' contentions that the Commission erred in allowing plaintiff to

seek a new hearing are founded in a misapprehension of the Workers' Compensation Rules and a misunderstanding of the Commission's Opinion and Award. Although it does not appear from our review of the record that plaintiff's wife has yet filed a motion to intervene, the Workers' Compensation Rules provide for further discovery and proceedings in these circumstances. We hold that the Commission did not abuse its discretion in permitting the parties to request further hearing pursuant to Rule 614.

### D. Discovery Sanctions

¶ 42 Defendants argue the Commission erred in imposing sanctions for failing to produce audio recordings in discovery. We disagree.

¶ 43 Workers' Compensation Rule 605 permits litigants to conduct written discovery. 11 N.C. Admin. Code 23A.0605. The Workers' Compensation discovery rules "should be liberally construed in order to accomplish the important goal" of facilitating pre-trial disclosure "of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of the basic issues and facts that will require trial." *Williams v. N.C. Dep't of Correction*, 120 N.C. App. 356, 359, 462 S.E.2d 545, 547 (1995) (citation and quotation marks omitted). "The administration of these rules, in particular the imposition of sanctions, is within the broad discretion" of the Commission, and the Commission's decision "regarding sanctions will only be overturned on appeal upon showing an abuse of that

discretion." *Id.* (citations omitted).

Rule 605(9) provides that sanctions "shall be imposed under this Rule for failure to comply with a Commission order compelling discovery unless the Commission excuses the failure based on an inability to comply with the order." 11 N.C. Admin. Code 23A.0605(9).

Defendants argue the Commission erred in entering sanctions against them because plaintiff "did not need to use the rules of discovery" because he already had the recordings at issue in his possession; defendants also describe plaintiff's argument as "textbook gamesmanship." Defendants acknowledge that they did not produce the recordings, instead arguing they were not required to produce them. Defendants' argument, however, completely ignores the Workers' Compensation Rules and procedural history of this case.

When Deputy Commissioner Moore granted plaintiff's Motion to Compel, the corresponding order required defendants to fully respond to plaintiff's discovery requests. The Commission noted that plaintiff's Interrogatories 8(d) and 8(e) requested "detail regarding training courses and ratings or evaluations" provided to plaintiff. The order was clear about what defendants were required to produce, and pursuant to Rule 605(9), sanctions "shall be imposed . . . for failure to comply with a Commission order compelling discovery." Defendants failed to comply with Deputy Commissioner Moore's order, and accordingly the Commission did not err in

sanctioning defendants.

### III.   Conclusion

For the foregoing reasons, we hold that the Commission applied the wrong legal standard in reviewing the medical evidence presented related to plaintiff's TBI and therefore erred in determining that plaintiff's TBI was not compensable.  Thus, we reverse and remand with respect to that portion of the Commission's Opinion and Award.  We affirm the Commission with respect to attendant care benefits and the imposition of discovery sanctions.

REVERSED AND REMANDED IN PART, AFFIRMED IN PART.

Judges HAMPSON and CARPENTER concur.